UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                                 Criminal Case No. 13-20874

Erie Adams,                    Honorable Sean F. Cox

      Defendant.

_____/

**ORDER ON MOTIONS IN LIMINE**

In this action, Defendant is charged in a second superceding indictment (Doc. #47) with Conspiracy to Possess with Intent to Distribute Heroin (Count One); Possession with Intent to Distribute Heroin (Count Two); Possession with Intent to Distribute Oxycodone (Count Three); Possession with Intent to Distribute Hydrocodone (Count Four); Possession of a Firearm In Furtherance of a Drug Trafficking Crime (Count Five); and Felon in Possession of Firearms (Count Six).

Prior to trial, the parties filed eight (8) motions in limine. The motions were fully briefed by the parties, and the Court heard oral argument on the motions on June 16, 2014. For the reasons set forth below, the Court shall 1) DENY WITHOUT PREJUDICE Defendant's Motion to Exclude Informant Statements (Doc. #38); 2) DENY Defendant's Motion to Exclude Statements Made By Defendant Pursuant to *Kastigar* Letter (Doc. #39); 3) DENY AS MOOT Defendant's Motion to Exclude Testimony Or Evidence Regarding Polygraph Exam of Defendant (Doc. #40); 4) DENY AS MOOT Defendant's Motion to Exclude Factual Background Of Defendant's 1992 Case (Doc. #43); 5) DENY AS MOOT Motion to Exclude Testimony Or Evidence That Tyrone Conyers Was Shot and Killed Or That Defendant May Be A Suspect (Doc. #44); 6) DENY WITHOUT

PREJUDICE Defendant's Motion to Exclude Wiretap Conversations From North Carolina Participants (Doc. #45); 7) DENY WITHOUT PREJUDICE Defendant's Motion to Exclude Heroin Seized From North Carolina Participants (Doc. #46); and 8) GRANT Government's Motion to Admit Self-Authenticating Records of Regularly Conducted Activity (Doc. #53).

## BACKGROUND

1.   **DEA Agents Witness Alleged Heroin Sale Between Conyers and North Carolina Targets**

This case is a result of a multi-state Drug Enforcement Agency ("DEA") investigation of individuals suspected of trafficking heroin. The DEA's investigation began in North Carolina, where agents suspected that two individuals, Terrance Poindexter ("Poindexter") and Rudolph Coles ("Coles") (collectively, "North Carolina targets") were buying and selling heroin.

DEA agents obtained a wiretap of phones belonging to the North Carolina targets. Through the wire, agents obtained transcripts of several telephone calls between Poindexter, Coles, and Tyrone Conyers ("Conyers") during which they discuss an apparent attempt to orchestrate a drug sale in Michigan. (*See* Phone Call Transcripts, attached to Doc. #45 at pp. 10-14).

DEA Agents in North Carolina then obtained a search warrant to place a Global Position System ("GPS") tracking device on Poindexter and Coles' rental vehicle. By tracking the North Carolina targets' movement in Detroit, Michigan, Michigan DEA agents were able to witness an alleged sale of heroin by Conyers to the North Carolina targets.

After purchasing heroin from Conyers, the North Carolina targets' returned to North Carolina. Their vehicle was stopped by law enforcement, who seized approximately 354.7 grams of heroin. (Doc. #46 at 4).

2.   **DEA Agents Follow Conyers To His Home In Southfield, Michigan**

2

After witnessing the suspected heroin sale from Conyers to the North Carolina targets, DEA agents followed Conyers to his home in Southfield, Michigan.  (*See* DEA Investigation Report, attached to Doc. #38 at pp. 8-15).  DEA agents later obtained and executed a search warrant for the Southfield home.  (Doc. #38 at p. 11).  Conyers was present during the execution of the search warrant.  Law enforcement seized approximately $8,000 in cash, which was believed to be proceeds from Conyers's recent heroin sale.

DEA agents interviewed Conyers after the search ended.  According to Defendant, Conyers told the agents that:

1)      He was the middle man for the heroin transaction which occurred earlier that day;

2)      Conyers made the arrangement for the sale of heroin to Coles;

3)      Coles and "Dog" were not in contact, allowing Conyers to profit from the transaction;

4)      Conyers identified "Dog" as the person who supplied him with the heroin that he sold to the North Carolina residents;

5)      "Dog's" cell phone number was 313-657-0197;

6)      "Dog" drove a black Chrysler 200;

7)      Conyers had known "Dog" for several years and admitted "dealing" with "Dog" for a long time;

8)      After Conyers received the money from the North Carolina targets, he contacted "Dog" to arrange for the purchase of heroin;

9)      Conyers met up with "Dog" in Southfield, Michigan;

3

10)     During the meeting, Conyers gave "Dog" the remaining amount of money and "Dog" gave Conyers heroin;

11)     Conyers thought there were three to four bags of heroin, or about 300 to 400 kilograms of heroin.

(Doc. #38 at 4-5)).

**3.     Conyers's Statements Lead DEA Agents To Defendant's Doorstep**

DEA agents tracked the location of the phone linked to the -0197 phone number, and discovered that it was frequently located at 19289 East 10 Mile Road, Roseville, Michigan ("the Roseville home"). Using this and other information, DEA agents obtained a search warrant for the Roseville home.

On November 8, 2013, DEA Detroit Field Division agents and other law enforcement officers executed the search warrant for the Roseville home. During the search, law enforcement seized cash, firearms, controlled substances, and other alleged drug trafficking tools and paraphernalia. Defendant was taken into custody after the search warrant execution was complete.

On November 20, 2013, Detroit Police Department officers found the body of Tyrone Conyers in a car in Detroit. Conyers had been murdered. He had been shot multiple times in the head.

**4.     The Government Makes An Offer Of Conditional Immunity To Defendant**

On January 10, 2014, Defendant entered into a proffer agreement[1] with the U.S. Attorney's Office.  (*See* Gvmt. Resp. at Ex. 1).  Defendant, his attorney, Assistant U.S. Attorney Steven Cares and Assistant U.S. Attorney David Gardey all signed the agreement.  (*See* Gvmt. Resp. at Ex. 1, p. 2).  The proffer agreement provides the following:

> (1)    [Defendant] agrees to make a complete and truthful statement of his knowledge of (and role in) the matters under investigation, and to fully and truthfully answer all questions . . . .
>
> (2)    Except as otherwise specified in this letter, no statement made by [Defendant's attorney] or [Defendant] during this proffer discussion will be offered against [Defendant] in the government's case-in-chief in any criminal prosecution of [Defendant] for the matters currently under investigation.
>
> . . .
>
> (6)    This proffer discussion is not a "plea discussion" within the meaning of Fed. R. Crim. P. 11 (f) or Fed. R. Evid. 410. Any use of the statements and information provided at this proffer discussion will be governed by the terms of this letter, and not Fed. R. Crim. P. 11 (f) or Fed. R. Evid. 410.
>
> (7)    [Defendant] shall . . . be given a polygraph examination to verify the truthfulness and completeness of any statement given as part of this agreement . . . If the results of the polygraph examination or conversations with the polygraph examiner indicate that your client has not been truthful . . . There are no restrictions on the government's use of any information provided or statements made in the proffer discussion.
>
> (8)    If your client fails to provide truthful and complete information . . . there are no restrictions on the government's use of any statements made by [Defendant] or information provided by . . . [Defendant.]

(Gvmt. Resp. at Ex. 1).

During the ensuing discussion after the parties executed the proffer agreement, Defendant

---

[1] Both parties refer to this agreement as a *Kastigar* letter.  This is probably an incorrect reference.  Judge Mark A. Goldsmith in *U.S. v. Walker*, 2014 WL 1154346 (E.D. Mich. 2014), examined a nearly identical letter and noted that it was not a *Kastigar* letter because it is "not subject to the statutory protections under which a *Kastigar* hearing is required."  *See Walker*, 2014 WL 1154346 at n. 2.  Rather, this letter it is an informal proffer agreement.

made several incriminating statements, including that he sold heroin and vicodin to supplement his income.

Defendant was also asked about his involvement in Tyrone Conyers' homicide. (Proffer Investigation Report, attached to Gvmt. Resp. at Ex. 2). Defendant stated that he "had heard CONYERS had been missing, but that this was the first time he had been told/heard that CONYERS was dead. [Defendant] denied any knowledge or involvement in CONYERS [sic] murder." (Gvmt. Resp. at Ex. 2).

**5.      Defendant Fails A Polygraph Examination**

Defendant submitted to a polygraph examination on January 17, 2014. (Secret Service Polygraph Report, attached to Gvmt. Resp. at Ex. 3). The polygraph report indicates that Defendant was asked 1) "Do you know for sure who harmed Tyrone?" and 2) "Did you participate in having Tyrone harmed?" (Gvmt. Resp. at Ex. 3). Defendant responded "No" to both questions. The polygraph examination report states "Deception Indicated" in regards to this line of questioning. At the June 16, 2014 hearing, DEA Special Agent Ryan McCormick testified that "Deception Indicated" means that Defendant failed the polygraph examination.

## ANALYSIS

**Docket No. 39 - Defendant's Motion to Exclude Defendant's Statements Made Pursuant to *Kastigar* Letter**

Defendant moves the Court to preclude the Government from soliciting testimony or offering any other evidence regarding incriminating statements Defendant made pursuant to the proffer agreement.

As another court in this District recently explained, the Sixth Circuit has described the nature of the informal proffer agreement and its applicable law:

6

> To secure a defendant's cooperation in a criminal investigation, the government may informally grant him immunity in exchange for his testimony. An agreement not to prosecute is contractual in nature, and subject to contract law standards. The conditions which will constitute a breach of the immunity agreement are governed by the agreement itself. If a firm agreement has been entered into, the government bears the burden of proving that the defendant failed to satisfy his part of the deal.

*U.S. v. Walker*, 2014 WL 1154346 at *3 (E.D. Mich. Mar. 19, 2014) (Goldsmith, J.), *quoting U.S. v. Fitch*, 964 F.2d 571, 574 (6th Cir. 1992) (internal citations omitted); *see also U.S. v. Beasley*, 2014 WL 2095357 at *6 (E.D. Mich. May 20, 2014) (Edmunds, J.) (Slip Copy). The Government has the burden of proving that there was a breach of the proffer agreement, and that the breach was material and substantial. *Beasley*, 2014 WL 2095357 at *6, *citing Fitch*, 964 F.2d at 574.

The Government argues that Defendant breached the proffer agreement because he failed his polygraph examination. Thus, the Government claims, all of Defendant's statements made pursuant to the proffer agreement may be used against him at trial. Defendant argues, in his reply, that he was at all times truthful in his statements and that the polygraph examination is unreliable. However, at the June 16, 2014 hearing, Defense counsel admitted that Defendant failed the polygraph examination.

Based on the Government's evidence, this Court is persuaded that Defendant breached the proffer agreement. DEA Special Agent Ryan McCormick ("McCormick") testified at oral argument that he was present on January 10, 2014 when the Government and Defendant engaged in their proffer discussions. McCormick confirmed that Defendant was asked whether he had any knowledge or involvement in the death of Tyrone Conyers. At that time, Defendant indicated that he did not have any knowledge or involvement in Conyers's death.

On January 17 2014, Defendant was required to take a polygraph examination pursuant to the terms of the proffer agreement. When the polygraph examiner asked Defendant whether he

"knew for sure who harmed Tyrone" and whether he "participate[d] in having Tyrone harmed," the polygraph produced an outcome of "Deception Indicated." (Gvmt. Resp. at Ex. 2 and Ex. 3). As McCormick testified, "Deception Indicated" means that Defendant failed the polygraph examination.

The proffer agreement specifically provides that failure of a polygraph examination allows the Government to use Defendant's statements against him without restriction. The Court concludes that, by failing the polygraph examination, Defendant breached the proffer agreement. *See Beasley*, 2014 WL 2095357 at * 10-11 (holding that defendant breached the proffer agreement by failing polygram examination.).

Further, the Court is persuaded that Defendant's breach was material and substantial. As the Government noted, the scope of its investigation is ongoing, and is much broader than Defendant's own criminal activity. The topic that Defendant lied about, i.e. his involvement in or knowledge about Tyrone Conyers's homicide, was central to the Government's investigation because it is related to a larger drug trafficking scheme and investigation. Because Defendant lied, he cannot be summoned as a potential witness in other cases, and the Government has garnered no leads from Defendant in furtherance of their investigation.

"The purpose behind the proffer agreement is to obtain truthful and complete information from an individual." *Walker*, 2014 WL 1154346 at *4. As a result of Defendant's deception, the Government likely did not get the benefit of its bargain out of the proffer agreement. Thus, the breach was material and substantial.

The proffer agreement provides the remedies available to the Government in the event of Defendant's breach of that agreement. *See Fitch*, 964 F.2d at 576. Here, the proffer agreement

8

provides the penalty for failing to pass a polygraph examination: "[t]here are no restrictions on the government's use of any information provided or statements made in the proffer discussion." (Gvmt. Resp. at Ex. 1, p. 2). Based on the plain language of the agreement, the Government may use Defendant's statements against him at trial.

Finally, despite Defendant's argument to the contrary, Fed. R. Evid. 410 and Fed. R. Crim. P. 11 (f) do not bar admission of the statements. The agreement, signed and acknowledged by all parties, including Defendant and his counsel, states that neither of these rules will bar the use of statements and information obtained during the proffer discussion. (*See* Gvmt. Resp. at Ex. 1, ¶ 6).

Based on the foregoing, the Court DENIES Defendant's Motion to Exclude Defendant's Statements Made Pursuant to Kastigar Letter.

## Docket No. 38 - Defendant's Motion to Exclude Informant Statements

Defendant moves the Court to exclude testimony or evidence regarding Conyers's statements to law enforcement because their introduction would violate the Confrontation Clause of the Sixth Amendment. *See Crawford v. Washington*, 541 U.S. 36 (2004).

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *United States v. Deitz*, 577 F.3d 672, 682-83 (6th Cir. 2009), *quoting Crawford v. Washington,* 541 U.S. 36, 53–54 (2004).

Thus, "[t]o trigger a violation of the Confrontation Clause, an admitted statement must be testimonial in nature, and must be hearsay." *United States v. Deitz*, 577 F.3d 672, 683 (6th Cir.

9

2009), *citing U.S. v. Gibbs,* 506 F.3d 479, 486 (6th Cir. 2007). A testimonial statement is one "made in circumstances in which a reasonable person would realize that [his or her statement] would likely be used in investigation or prosecution of a crime." *U.S. v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). Hearsay is an out-of-court statement offered for the truth of the matter asserted. *See* Fed. R. Evid. 801 (c).

The United States Court of Appeals for the Sixth Circuit has held that statements made by a confidential informant are "testimonial" and subject to the Confrontation Clause. *Cromer*, 389 F.3d at 675-76. Nevertheless, the Sixth Circuit has upheld the admission of confidential informant statements when they were not offered for the truth of the matter asserted—i.e., when the statements are not hearsay. *United States v. Deitz*, 577 F.3d 672, 683 (6th Cir. 2009)*, citing Cromer*, 389 F.3d at 676; *see also United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007) ("In some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay.").

The Government responds that it will not offer any of Conyers's statements for the truth of the matter asserted, so they are not hearsay and Defendant's Confrontation Clause rights will not be violated.

The Court finds that some of Conyers's statements may not constitute hearsay. However, the Court cannot make a definitive ruling on this issue until it hears the questions as presented during live testimony at trial. Therefore, the Court shall DENY WITHOUT PREJUDICE Defendant's Motion to Exclude Informant Statements. If Defense counsel believes at trial that the Government has asked a question—the answer to which may impact Defendant's Confrontation Clause rights— then Defense counsel may renew her motion or object at that time.

10

**Docket No. 45 - Defendant's Motion to Exclude Wiretap Conversations From North Carolina Participants**

Defendant asks the Court to exclude any testimony or evidence regarding the telephone conversations between Conyers, Poindexter and/or Coles that were obtained by the Government through wiretap because they are inadmissible hearsay. The Government responds that the statements are admissible as statements of co-conspirators. *See* Fed. R. Evid. 801(d)(2)(E).

The Federal Rules of Evidence define hearsay as an out of court statement offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Generally, hearsay is not admissible as evidence. *See* Fed. R. Evid. 802.

The Federal Rules of Evidence also provide categories of statements that are excluded from the definition of hearsay. *See* Fed. R. Evid. 801(d)(2). Specifically, the rules exclude from the definition of hearsay an opposing party's statement, that "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 802(d)(2)(E).

"For an out-of-court statement to be admissible under Fed.R.Evid. 801(d)(2)(E), the offering party must establish by a preponderance of the evidence that a conspiracy existed, that the defendant was a member of the conspiracy, and that the coconspirator's statement was made during the course and in furtherance of the conspiracy." *U.S. v. Kelsor*, 665 F.3d 684, 694 (6th Cir. 2011). These findings must be made by the district court. *Id.*, *citing U.S. v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978).

The Government must establish the defendant's participation in the conspiracy before hearsay statements of a co-conspirator can be entered into evidence. *U.S. v. Clark*, 18 F.3d 1337, 1341 (6th Cir. 1994). In evaluating whether the existence of a conspiracy has been established, the Court can take into consideration the content of the proffered statements. *Id.* However, there must

11

be some other independent evidence of the conspiracy in order for the statements to be properly admitted. *Id.* at 1341-42.

The Court finds that the admissibility of the statements at issue depends on whether the Government lays the proper foundation for the statements at trial. Therefore, the Court shall DENY WITHOUT PREJUDICE Defendant's Motion in Limine (Doc. #45). If Defense counsel believes that the Government is about to elicit evidence of a co-conspirator statement, for which the proper foundation has not been established, then Defense counsel may renew her motion or object at that time.

**Docket No. 46 - Defendant's Motion to Exclude Heroin Seized From North Carolina Participants**

Defendant asks the Court to exclude evidence of the heroin seized from the North Carolina participants because it is not relevant in this case. The Government responds that the evidence is relevant because it is a fact showing the existence of a conspiracy to sell heroin, of which Defendant is charged.

The Federal Rules of Evidence state that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevancy is a low bar; all that is required is for the evidence to" satisfy Federal Rule of Evidence 401. *U.S. v. Dowlen*, 514 Fed. App'x 559, 564 (6th Cir. 2013). Irrelevant evidence is not admissible. Fed. R. Evid. 402.

The Court finds that the relevance of the seized heroin depends on the nature of the proofs as presented at trial. Therefore, the Court shall DENY WITHOUT PREJUDICE Defendant's Motion in Limine (Doc. #46). If Defense counsel believes that the Government is about to elicit testimony or evidence regarding the seized heroin, for which the proper foundation has not been laid,

12

then Defense counsel may renew her motion or object at that time.

**Docket No. 43 - Defendant's Motion to Exclude Factual Background Of Defendant's 1992 Case**

Defendant asks the Court to preclude the Government from soliciting testimony or admitting evidence related to Defendant's 1992 criminal case. The Government responds that it only intends to offer the certified conviction to support its felon in possession of firearms charge. Defense counsel does not object to the Government's introduction of the certified conviction document. Therefore, the Court shall DENY AS MOOT Defendant's Motion in Limine (Doc. #43).

**Docket No. 40 - Defendant's Motion to Exclude Testimony Or Evidence Regarding Polygraph Exam of Defendant**

Defendant asks the Court to exclude any testimony or evidence related to Defendant's polygraph examination. The Government stated at oral argument, and in its response, that it does not intend to offer any such testimony or evidence. Therefore, the Court shall DENY AS MOOT Defendant's Motion in Limine (Doc. #40).

**Docket No. 44 - Defendant's Motion to Exclude Testimony or Evidence that Tyrone Conyers Was Shot and Killed Or That Defendant May Be A Suspect**

Defendant asks the Court to preclude the Government from soliciting testimony or offering evidence regarding the fact that the informant, Tyrone Conyers, was shot and killed and/or that Defendant may be a suspect in that homicide investigation. The Government stated at oral argument, and in its response, that it does not intend to offer any such testimony or evidence. Therefore, the Court shall DENY AS MOOT Defendant's Motion in Limine (Doc. #44).

**Docket No. 53 - Government's Motion to Admit Self-Authenticating Records Of Regularly Conducted Activity**

The Government moves the Court to admit self-authenticating business records of Brinks, Inc., pursuant to Federal Rule of Evidence 902 (11). Defense counsel stated in his response, and at

13

oral argument, that Defendant does not object to this Court's admission of the Brinks, Inc. business

records.  Therefore, the Court shall GRANT the Government's Motion in Limine (Doc. #53).

> **IT IS SO ORDERED.**

> S/Sean F. Cox
> Sean F. Cox
> United States District Judge

Dated:  June 17, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on
June 17, 2014, by electronic and/or ordinary mail.

> S/Jennifer McCoy
> Case Manager

14