UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                                                         Criminal Case No. 13-20874

Erie Adams,                                                                   Honorable Sean F. Cox

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S RENEWED MOTION TO EXCLUDE STATEMENTS OF NORTH CAROLINA PARTICIPANTS**

In this action, Defendant is charged in a second superceding indictment (Doc. #47) with, among other charges, Conspiracy to Possess with Intent to Distribute Heroin (Count One).

Prior to trial, Defendant filed a Motion to Exclude Wiretap Conversations of North Carolina Participants (Doc. #45). In an Order issued on June 17, 2014, this Court denied without prejudice Defendant's motion (Doc. #65). The Court indicated that Defendant could renew his motion at trial.

During trial, the Government sought to introduce recorded phone conversations between Tyrone Conyers ("Conyers"), Terrance Coles ("Coles") and Terrance Poindexter ("Poindexter"), who are alleged coconspirators of Defendant.

On June 19, 2014, prior to the admission of the recorded phone conversations, Defendant renewed his Motion to Exclude Wiretap Conversations of North Carolina Participants. Defendant argues that the Government has not established the elements necessary for the alleged coconspirator statements to be admissible under Federal Rule of Evidence 801(d)(2)(E). The Court denied Defendant's motion on the record, and stated that an opinion and order would be forthcoming.

For the reasons set forth below, pursuant to *U.S. v. Enright*, 579 F.2d 980 (6th Cir. 1978),

the Court finds by a preponderance of the evidence that the Government has established the foundation required for admission of the coconspirator statements. Therefore, the Court shall DENY Defendant's motion.

## APPLICABLE LAW

The Federal Rules of Evidence define hearsay as an out of court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Generally, hearsay is not admissible as evidence. Fed. R. Evid. 802.

However, the Federal Rules of Evidence also provide that certain categories of statements are excluded from the definition of hearsay. *See* Fed. R. Evid. 801(d)(2). Specifically, a statement offered against an opposing party that "was made by the party's coconspirator during and in furtherance of the conspiracy" does not constitute hearsay. Fed. R. Evid. 801(d)(2)(E).

"For an out-of-court statement to be admissible under Fed. R. Evid. 801(d)(2)(E), the offering party must establish by a preponderance of the evidence that a conspiracy existed, that the defendant was a member of the conspiracy, and that the coconspirator's statement was made during the course and in furtherance of the conspiracy." *U.S. v. Kelsor*, 665 F.3d 684, 694 (6th Cir. 2011). The district court must make these findings prior to the end of trial. *Id.*, *citing Enright*, 579 F.2d at 986-87. The Court may conditionally admit the hearsay statements subject to a later finding of admissibility. *U.S. v. Castro*, 908 F.2d 85, 91 (6th Cir. 1990).

In evaluating whether the existence of a conspiracy has been established, the Court can take into consideration the content of the proffered statements. *U.S. v. Clark*, 18 F.3d 1337, 1341 (6th Cir. 1994). However, there must be some other independent evidence of the conspiracy in order for the statements to be properly admitted. *Id.* at 1341-42.

## GOVERNMENT'S EVIDENCE AT TRIAL

**1)     DEA Special Agent Debra Lynch**

At trial, the Government offered the testimony of Debra Lynch ("Agent Lynch"). Lynch is a Special Agent with the Drug Enforcement Administration ("DEA"), Detroit Field Division. On January 10, 2014, Defendant participated in an interview with the Government pursuant to an informal proffer agreement,[1] at which Agent Lynch was present. Agent Lynch testified regarding several statements Defendant made during the interview.

Agent Lynch testified that, during the interview, Defendant admitted that Conyers provided him with 750 grams of heroin for the purpose of "stretching" it.[2] Defendant stated that Conyers provided half of the heroin "on credit," and that Defendant would eventually have to pay Conyers $80,000 for the heroin Defendant received. Defendant also stated that, on October 28, 2013,[3] Defendant sold some of the heroin back to Conyers.

**2)     Detroit Police Department Officer Mo Jimenez**

At trial, the Government offered the testimony of Detroit Police Department Officer Mo Jimenez ("Officer Jimenez"). Officer Jimenez was also present during Defendant's interview with the Government. Officer Jimenez testified that, during the interview, Defendant admitted that Conyers provided him with heroin so that Defendant could "double it up," or get more profit out of it. Defendant stated that he later sold some of the heroin back to Conyers so that Conyers could sell it to individuals from North Carolina.

---

[1] *See* Order Denying Defendant's Motion to Exclude Statements Made By Defendant Pursuant to *Kastigar* Agreement (Doc. #65).

[2] Debra Lynch testified that to "stretch" heroin means to dilute the heroin with an adulterant to increase the quantity and, ergo, increase the profit.

[3] Conyers allegedly sold heroin to the North Carolina participants, Terrance Coles and Terrence Poindexter, on October 28, 2013.

3

**3)     DEA Special Agent Ryan McCormick**

At trial, the Government offered the testimony of DEA Special Agent Ryan McCormick ("Agent McCormick"). Agent McCormick was also present during Defendant's interview with the Government.

Agent McCormick testified that, during the interview, Defendant admitted that he had procured approximately 750 grams of heroin from Conyers so that Defendant could attempt to "stretch," or dilute, the heroin to increase its weight. Defendant also stated that, on October 28, 2013, he provided some of the heroin back to Conyers. Defendant was to pay Conyers $80,000 for the heroin he had received.

Agent McCormick also testified regarding several telephone calls that took place on October 28, 2013 between Conyers, Coles and Poindexter. Agent McCormick testified that: 1) Coles and Poindexter exchanged a phone call on October 28, 2013 at approximately 9:43 a.m.; 2) Conyers made an outgoing phone call to Coles on October 28, 2013 at approximately 10:00 a.m; 3) Conyers made an outgoing call to 313-657-0197 on October 28, 2013 at approximately 10:14 a.m.; 4) A phone call took place between Conyers and Poindexter on October 28, 2013 at approximately 12:08 p.m. McCormick later testified that the phone associated with phone number 313-657-0197 was recovered during the raid on Defendant's Roseville home.

**4)     DEA Special Agent Jason Collins**

At trial, the Government offered the testimony of Special Agent Jason Collins ("Agent Collins"). Agent Collins authenticated the recorded telephone conversations, and testified that the phone calls were made on October 28, 2013.

**ANALYSIS**

4

**1)      The Government Has Established the Existence of a Conspiracy, and that Defendant is a Member of the Conspiracy.**

The evidence at trial, including the testimony of Agent Collins, Agent Lynch, Agent McCormick, and Officer Jimenez, establishes that Defendant, Conyers, Coles and Poindexter were involved in a conspiracy to violate the drug laws of the United States.  During an interview with the Government, Defendant admitted that he had an agreement with Conyers, whereby Defendant obtained approximately 750 grams, or $80,000 worth, of heroin "on credit" for the purpose of "stretching" it.  *See U.S. v. Cole*, 59 Fed. App'x 696, 700 (6th Cir. 2003), *citing U.S. v. Grunsfeld*, 558 F.2d 1231, 1235 (6th Cir. 1996) (noting that "evidence of credit sales and purchases of a large volume of drugs creates an inference of an on-going relationship with the conspiracy.").  Defendant also admitted to returning some of the heroin back to Conyers on the day that Conyers sold heroin to Poindexter and Coles.

The Court finds that these facts, taken together, show that Conyers, Defendant, Poindexter and Coles conspired to violate the drug laws of the United States.  The Court therefore finds, by a preponderance of the evidence, that the Government has established the existence of a conspiracy and that Defendant is a member of the conspiracy.

**2)      The Recorded Statements at Issue Were Made in Furtherance of the Conspiracy.**

At trial, the Government sought to introduce the audio recordings of three telephone calls (Gvmt. Exs. 8A, 8B, and 8C) that contained recorded conversations between Conyers, Poindexter and Coles.

The evidence at trial, including the testimony of Agent Collins, Agent Lynch and Agent McCormick, as well as the content of the statements themselves, establishes that the statements made during these phone conversations were made in furtherance of the conspiracy.

First, these phone calls took place during the morning and early afternoon hours of October 28, 2013, which is the day that Conyers sold heroin to Poindexter and Coles. The first phone call (Gvmt. Ex. 8A) was between Poindexter and Coles, during which one asks the other for Conyers' phone number.

The second phone call (Gvmt. Ex. 8B) occurred between Conyers and Poindexter at approximately 11:45 a.m. During this conversation, Conyers asks Poindexter if he remembers "last time on, when I told you to come on Eight Mile and Lahser?" Poindexter then indicates that he is leaving his current location on Cherrylawn in Detroit, Michigan to meet Conyers at the Eight Mile and Lahser location. Agent Lynch testified that, on the morning of October 28, 2013, she was conducting surveillance on the Cherrylawn location and saw Poindexter depart from it. Agent Lynch followed Poindexter's vehicle to Conyers's apartment complex located at Eight Mile and Lahser.

The third phone call (Gvmt. Ex. 8C) was made by Conyers to Poindexter at approximately 12:08 p.m., as Agent Lynch was conducting physical surveillance on Poindexter and Coles' vehicle. During this conversation, Conyers told Poindexter to come up to his apartment door. Agent Lynch testified that she saw Poindexter walk up to Conyers' door, and, about one minute later, return to his vehicle with his hands shoved in the pockets of his hooded sweatshirt.

Based on the foregoing, the Court finds it clear that these recorded phone calls were made between coconspirators to orchestrate the sale of heroin that was to take place between Conyers and Poindexter. Therefore, the Court finds, by a preponderance of the evidence, that the statements made during the recorded telephone conversations were made during, and in furtherance of, the conspiracy.

## CONCLUSION

The Court finds that all of the foundational elements for admission of coconspirator statements have been established by a preponderance of the evidence, pursuant to the Sixth Circuit's instructions set forth in *U.S. v. Castro*, and *U.S. v. Enright.* Therefore, the Court finds that Government's Exhibits 8A, 8B, and 8C are admissible as coconspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: June 23, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 23, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager