UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                                                                    Case No. 13-20874

Erie Adams,                                                    Honorable Sean F. Cox

      Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR MISTRIAL**

In this action, Defendant is charged with several controlled substance and firearm offenses. Jury selection in this case took place on June 12, 2014, and trial commenced on June 18, 2014.

On June 20, 2014, Defendant filed a Motion for Mistrial (Doc. #67), arguing that the improper testimony of Government witness Moises Jimenez has highly prejudiced Defendant and deprived him of his right to a fair trial. The Government responds that a mistrial is not warranted because the Court's direct and immediate curative instruction to the jury was sufficient to cure any prejudice the Defendant may have suffered. (Doc. #68).

For the reasons set forth below, the Court shall DENY Defendant's Motion for Mistrial (Doc. #67).

**BACKGROUND**

This case is a result of a multi-state Drug Enforcement Administration ("DEA") investigation of individuals suspected of trafficking heroin. The DEA's investigation began in North Carolina, where agents were investigating two individuals, Terrance Poindexter ("Poindexter") and Terrance Coles ("Coles") (collectively, "North Carolina targets") who were suspected of buying and selling heroin.

DEA agents obtained a wiretap of phones belonging to the North Carolina targets. Through the wire, agents obtained transcripts of several telephone calls between Poindexter, Coles, and Tyrone Conyers ("Conyers") during which they discuss an apparent attempt to orchestrate a drug sale in Michigan.

DEA Agents in North Carolina then obtained a search warrant to place a Global Position System ("GPS") tracking device on Poindexter and Coles' rental vehicle. By tracking the North Carolina targets' movement in Detroit, Michigan, Michigan DEA agents were able to witness an alleged sale of heroin by Conyers to the North Carolina targets.

After purchasing heroin from Conyers, the North Carolina targets' returned to North Carolina. Their vehicle was stopped by law enforcement, who seized approximately 354.7 grams of heroin.

After witnessing the suspected heroin sale from Conyers to the North Carolina targets, DEA agents followed Conyers to his home in Southfield, Michigan. DEA agents later obtained and executed a search warrant for the Southfield home. Conyers was present during the execution of the search warrant. Law enforcement seized approximately $8,000 in cash, which was believed to be proceeds from Conyers's recent heroin sale.

DEA agents interviewed Conyers after the search ended. During the interview, Conyers made several statements to DEA agents that lead them to begin investigating Defendant. Through information gathered during their surveillance of Defendant, DEA agents obtained a search warrant for Defendant's home located in Roseville, Michigan.

Law enforcement executed the search warrant for Defendant's Roseville home on November 8, 2013. Defendant was present and taken into custody.

2

On November 20, 2013, Detroit Police Department officers found the body of Tyrone Conyers in a car in Detroit. Conyers had been murdered. He had been shot multiple times in the head.

On January 10, 2014, Defendant and the Government entered into a "*Kastigar* agreement" or informal "proffer agreement." The Government conducted an interview of Defendant. Several individuals were present during the interview, including Assistant U.S. Attorney Steven Cares, Defense counsel Suzanna Kostovski, DEA Special Agent Ryan McCormick, DEA Special Agent Debra Lynch, Detroit Police Department Homicide Detective Scott Shea, and Detroit Police Department Officer Moises Jimenez.

During the interview, Defendant was asked about his involvement in Tyrone Conyers' homicide. Defendant stated that he had heard Conyers had been missing, but that he was unaware the Conyers had been murdered. Defendant denied any knowledge or involvement in Conyers's murder.

**Defendant's Motion to Exclude Evidence or Testimony That Tyrone Conyers Was Shot and Killed Or That Defendant May Be A Suspect (Doc. #44)**

Prior to trial, Defendant filed a Motion in Limine to prevent the Government from eliciting testimony or offering evidence regarding the fact that Tyrone Conyers was murdered, or that Defendant may be a suspect in his homicide. (Doc. #44). The Government responded that it would "not seek to introduce evidence related to Conyers' murder investigation." (Doc. #59 at 18).

Based on the Government's representation that it would not offer any evidence related to Conyers' homicide, the Court denied Defendant's motion as moot. (*See* Doc. #65, Order on Motions in Limine).

**Detroit Police Officer Moises Jimenez's Trial Testimony**

3

At trial, the Government offered the testimony of Detroit Police Department Officer Moises Jimenez ("Officer Jimenez").  On direct examination, Officer Jimenez testified to certain statements that Defendant made during his interview with the Government.  During direct examination, Officer Jimenez made no improper statements or references.

On cross-examination, Defense counsel asked the following question and received from Officer Jimenez the following response:

> Q:     Okay. Now, in reviewing these notes, does it refresh your recollection as to whether or not Mr. Adams allegedly said during the debriefing that he did not have any customers?
>
> A:     It still doesn't, because I wasn't there for the dope thing.  I'm there for the homicide thing.  Mr. Tyrone Conyers is dead.

(Jimenez Trans. at p. 7).

Defense counsel immediately objected, and the Court held a sidebar conference.  Defense counsel requested a mistrial, but the Court suggested that the jury be given a curative instruction.  The Government agreed that a curative instruction would be most appropriate.  At sidebar, Government counsel stated that he had instructed and prepared his witnesses, but had not spoken to Officer Jimenez in a couple of weeks.  The Court then took a short recess.

**The Court's Curative Instruction To The Jury**

When the Court returned from recess, the Court instructed the jury as follows:

> The Court:     All right. Members of the Jury, you have heard testimony that Mr. Conyers is dead.  You are not to consider the fact that he is dead at all in your consideration of the evidence received in this case.  It cannot factor at all into your deliberations. Members of the Jury, will you commit to following this instruction?
>
> The Jury:       Yes.
>
> The Court:     I will read it to you again.  You've heard testimony that Mr. Conyers

4

        is dead.  You are not to consider the fact that he has [sic] dead at all in your consideration of the evidence received in this case.  It cannot factor into your deliberations at all.  Members of the Jury, will you commit to following this instruction?

The Jury:      Yes.

(Jimenez Trans. at p. 13).

**Each Juror Agreed To Follow The Court's Instruction**

Thereafter, the Court polled the jury, asking each individual juror whether he or she would commit to following the Court's instruction.  Each juror answered in the affirmative.

## ANALYSIS

In determining whether a mistrial is warranted after an improper reference is made during trial, the Court considers five factors: "(1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant." *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003), *citing U.S. v. Forrest*, 17 F.3d 916, 920 (6th Cir. 1994).  Even though Officer Jimenez's improper comment was made during his cross examination rather than on direct examination, this analysis still "provides appropriate guidance" in assessing his testimony.  *U.S. v. Young*, 347 Fed. App'x 182, 188 (6th Cir. 2009) (acknowledging that the five factor analysis is not directly on point, but is nevertheless appropriate, to consider whether a witness's improper reference during cross-examination warrants a mistrial.).

Upon consideration of these factors, the Court concludes that a mistrial is not warranted in this case.  To begin, the Court acknowledges that Officer Jimenez's statement was not responsive to the question asked by Defense counsel.  Nor was it solicited by the Government.  All lines of

inquiry by both parties on direct and cross-examination were reasonable.  Officer Jimenez's errant statement should not have been made.

Accordingly, the Court finds no bad faith evidenced by the Government.  Government counsel represents, and the Court believes, that Government witnesses were prepared and instructed before trial.  As the improper testimony came out during cross-examination, Government counsel played no part in eliciting the statement from Officer Jimenez.  There is no indication that the Government directly or indirectly sought to have the objectionable testimony enter into this trial.

Additionally, the Court's limiting instruction was clear, immediate, and forceful.  The Jury was instructed to disregard Officer Jimenez's statement only a few minutes after it was initially heard.  Moreover, the Court twice read the limiting instruction to the Jury.  The Court then polled the Jury collectively and individually to ensure that each juror understood, and agreed to follow, the limiting instruction.  Each juror affirmed that he or she would follow the instruction in this case, and a jury is presumed to follow its instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (6th Cir. 2000).  The Court finds that the limiting instruction is sufficient to cure any prejudice that Defendant otherwise would have suffered as a result of Officer Jimenez's improper testimony.

Finally, the Court finds that the weight of the evidence against Defendant militates against granting a mistrial in this case.  Without recounting the entirety of the Government's case, the Court notes that Officer Jimenez's improper remark constitutes a very small part of the evidence offered against Defendant.  Importantly, numerous witnesses have testified that Defendant admitted to selling heroin and other controlled substances in conjunction with his alleged coconspirator, Tyrone Conyers.  The Court is confident that, should the Jury return a guilty verdict on any charge, that verdict will be made in reliance on the evidence received at trial and not on any improper reference

6

made by Officer Jimenez.

## CONCLUSION

Based on the foregoing, the Court hereby DENIES Defendant's Motion for Mistrial.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  June 23, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 23, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager