UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff/Respondent,

v.                                       Criminal Case No. 13-20874
                                          Civil Case No. 17-11866

Erie Adams,

                                          Sean F. Cox
    Defendant/Petitioner.               United States District Court Judge

_____/

**OPINION & ORDER
DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255**

This is a habeas petition made pursuant to 28 U.S.C. § 2255. Petitioner Erie Adams ("Adams") filed his habeas petition acting *pro se*, asserting that he is entitled to relief from his convictions and sentences for drug trafficking and firearm offenses. Adams claims that both his trial counsel and his appellate counsel provided ineffective assistance of counsel to him. The motion was fully briefed by the parties. Because the files and records of the case conclusively show that Adams is entitled to no relief as to the claims in this § 2255 motion, an evidentiary hearing is not necessary and the matter is ripe for a decision by this Court. For the reasons set forth below, the Court denies the motion and declines to issue a certificate of appealability.

**BACKGROUND**

In Criminal Case Number 13-20874, Adams was charged with drug trafficking and firearm offenses.

Adams was initially charged via a criminal complaint, after the execution of a search warrant at his home in Roseville, Michigan on November 8, 2013. (ECF No. 1, Criminal Complaint).

Following his arrest, Adams sat down with his counsel, Suzanna Kostrovski, and investigators for a proffer session on January 10, 2014. (ECF No. 59-2). During the proffer, Adams discussed the drugs found in his home and that he had received drugs from a man named Tyrone Conyers. (ECF No. 59-3). Counsel for the Government advised that Conyers had recently been murdered and asked if Adams knew anything about that. Adams denied any knowledge or involvement in the murder. The proffer agreement allowed the Government to test the truthfulness of Adams's statement made during the proffer through a polygraph examination and provided the Government could use Adams's statements against him if he failed that examination. (ECF No. 59-4).

On January 17, 2014, Adams was given a polygraph examination and he was asked if he knew who killed or participated in the killing of Conyers. Adams failed the examination.

On March 13, 2014, a grand jury returned a Superceding Indictment, which included both drug and gun charges, including a violation of 18 U.S.C. § 924(c). (ECF No. 18). The Government also filed a penalty enhancement under 18 U.S.C. § 851. (ECF No. 42).

The Government ultimately charged and tried Adams on a Second Superceding Indictment that included six offenses: (1) conspiracy to distribute heroin; (2)-(4) possession with intent to distribute heroin, oxycodone, and hydrocodone; (5) possession of a firearm in furtherance of drug trafficking; and (6) being a felon in possession of a firearm.

Adams proceeded to a jury trial. After a three-day trial, the jury convicted Adams on all six counts.

This Court sentenced Adams to: 240 months for Counts 1 and 2, the mandatory minimum, to run concurrently; 120 months for Counts 3, 4, and 6, concurrent to all other counts;

and the mandatory 300 months for Count 5, which must run consecutive to all other counts.

Adams filed a direct appeal, raising multiple issues and challenges. The United States Court of Appeals for the Sixth Circuit affirmed Adams's convictions and sentence. *United States v. Adams*, 655 F. App'x 312 (6th Cir. 2016).

Thereafter, on June 12, 2017, Adams filed a *pro se* Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No 106).

Because Adams was seeking to assert a claim that his trial counsel provided ineffective assistance of counsel by virtue of not having made a *Batson* challenge during jury selection, Adams filed a motion seeking to obtain a transcript of jury selection. This Court granted that request and the Government provided Adams with the requested transcript. (*See, eg.*, ECF No. 137).

Adams also requested that he be able to raise additional claims that were not in his original brief. The Court granted that request and ordered Adams to include all claims he wished to raise in a new § 2255 brief of no more than twenty-five pages. Adams filed that brief on March 1, 2018. (ECF No. 134). Adams filed a Reply Brief on January 2, 2019. (ECF No. 144).

Despite having been provided the transcript of jury selection, Adams has not identified the name of any prospective black juror who was excused by the Government via a peremptory challenge.

The transcript of jury selection reflects that, after the jury had been selected, Adams's counsel placed an objection on the record regarding the composition of the jury venire:

> MS. KOSTOVSKI: May I just make a quick record about the jury selection and the prospective jury pool.

|  |  |
|---|---|
|  | What I noticed, Your Honor, is there were only two African-Americans that were in the large pool and then there was one African-American potential juror that was seated as a potential juror, and Mr. Cares used a peremptory challenge and she was removed from the jury. So I just want the record to reflect that what Mr. Adams has here is an all Caucasian or white jury. |
| THE COURT: | Okay. The selection process is random. I don't know how I am supposed to react. |
| MS. KOSTOVSKI: | Well, I'm not sure I'm looking for reaction judge, except I'm just trying to make a record that a jury of his peers should at least reflect some – at least one, maybe more African-American. And I only noticed there were only two that were in a large pool to begin with, and then only one was seated and that one was excused by Mr. Cares. I'm not making any accusations that he excused her based on race or other inappropriate factors. I'm just making a record that there really is not a jury of his peers in the sense that there was no African-Americans selected and there were only two potential candidates. |
| MR. CARES: | Your Honor, just to briefly respond if I may. It doesn't sound that the defense is making a direct challenge to the jury pool. Just making a record. But I just note for purposes of the record as well that the jury selection process, the collection of jurors that sat in the gallery today has been approved by the Sixth Circuit as being constitutional. |
| THE COURT: | Right. All right. So the motions in limine we are going to argue at say 11:00 – 10:30 on Monday. Will that work for everybody? |

(ECF No. 97 at PageID. 1816-1818).

In his updated brief, Adams asserts that both his trial and appellate counsel provided ineffective assistance of counsel to him.

## STANDARD OF REVIEW

4

Petitioner's motion is brought pursuant to 28 U.S.C. § 2255, which provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255. To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

Defendants seeking to set aside their sentences pursuant to 28 U.S.C. section 2255 have the burden of establishing their case by a preponderance of the evidence. *McQueen v. U.S.*, 58 Fed. App'x 73, 76 (6th Cir. 2003). It is well established that when a defendant files a section 2255 motion, he or she must set forth facts establishing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted).

**ANALYSIS**

The familiar United States Supreme Court decision in *Strickland v. Washington*, 466 U.S. 688 (1984) governs this Court's analysis of ineffective assistance of counsel claims. "In *Strickland*,

the Supreme Court articulated a two-component test that must be satisfied for a defendant to demonstrate that a counsel's performance was so defective as to require reversal of a conviction . . . ." *Lint v. Preselnik*, 542 F. App'x 472, 475 (6th Cir. 2013). "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

To establish deficient performance, the defendant must show that "counsel's representation fell below the objective standard of reasonableness." *Lint,* 542 F. App'x at 475 (citing *Strickland*, 466 U.S. at 688). Judicial scrutiny of counsel's performance is highly deferential, and this Court must apply the strong presumption that counsel's representation fell within the wide range of reasonable professional conduct. *Lint,* 542 F. App'x at 475-76 (citing *Strickland*, 466 U.S. at 689). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Thus, Petitioner must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citation and internal quotations omitted).

To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The likelihood of a different result "must be substantial, not just conceivable." *Lint*, 542 F. App'x at 476 (citing *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011)).

In his § 2255 Motion, Adams asserts that both his trial and appellate counsel provided ineffective assistance of counsel to him, raising a litany of issues.

**Trial Counsel's Alleged Failure To Convey A Plea Offer**

Adams contends that his trial counsel provided ineffective assistance of counsel by not conveying the Government's plea offer to him.

As stated on the record at the plea cutoff conference, however, the Government did not offer Adams a Rule 11 Agreement. The only option that the Government gave Adams was to plead as charged in the indictment, which was rejected by Adams in open court:

> THE COURT: Good morning. This is final pretrial – pleas cutoff conference.
> It's my understanding that there's going to be no plea, is that correct?
> MR. CARES: That's correct, Your Honor.
> MS. KOSTOVSKI: That's correct.
> THE COURT: Do we wish to put the offer, the last offer that was made to the defendant and reject it on the record?
> MR. CARES: Your Honor, there's been no offer made, other than to the charges in the indictment, so the offer is essentially to plead as charged.
> THE COURT: Okay. And that request has been rejected, is that correct?
> MS. KOSTOVSKI: That's correct.
> THE COURT: Is that true, sir?
> DEFENDANT ADAMS: Yes, sir.

(ECF No. 89 at PageID.990-991). Accordingly, this claim fails.

**Trial Counsel Allowing Adams To Enter Into Proffer Agreement**

Adams also faults his trial counsel for allowing him to enter into the proffer agreement with the Government, asserting that no reasonable attorney would have agreed to such an agreement. Adams assert that is so because there is "way too much room for severe errors in taking a polygraph." (ECF No. 134 at PageID.2072).

Adams does not dispute, however, that he signed and agreed to the proffer agreement. Moreover, in light of all of the other evidence that was presented at trial, Adams has not established that he suffered prejudice in any event.

7

**Trial Counsel's Failure To Object During Jury Selection**

Adams faults his trial counsel for not having objected during jury selection, raising two different claims.

First, he asserts that his counsel rendered deficient performance by not having objected to the racial composition of his jury venire, which he asserts only contained two black individuals.

The Sixth Amendment protects a criminal defendant's right to a jury selected from a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 526-27 (1975). To establish a violation of this right, a defendant such as Adams must show: 1) the group allegedly excluded is a distinctive group within the community; 2) the representation of the group in venires from which juries are selected is not fair and reasonable in relation to the number of persons in the community; and 3) the under-representation is because of systemic exclusion of the group in the jury selection process. *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998). A criminal defendant does not establish the second prong of the test by pointing to a lack of representation of the distinctive group in his or her jury panel. *See, eg., Allen*, 160 F.3d at 1103 (the defendant "must show more than that [his] particular panel was unrepresentative."); *United States v. Suggs*, 531 F. App'x 609, 619 (6th Cir. 2013) (citing *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008)).

Here, Adams has not established that his trial counsel was ineffective for failing to challenge the jury pool. In support of the second and third elements of his Sixth Amendment challenge, Adams simply asserts that there were only two black individuals in his particular jury venire. That is insufficient. *Id.*

Second, Adams faults his trial counsel for not having raised a *Batson* challenge during jury selection.

The Equal Protection Clause precludes a party from using a peremptory challenge to exclude members of the jury venire on account on their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). The Supreme Court has articulated a three-step analysis to be applied to an equal protection claim that purposeful discrimination occurred in jury selection (ie., a "*Batson* challenge"). *Rice v. White*, 60 F.3d 242, 253 (6th Cir. 2011).

First, the party opposing the strike must make out a *prima facie* case of race discrimination by showing: 1) that he/she is a member of a cognizable racial group; 2) that the proponent of the strike has used peremptory challenges to remove from the venire members of the strike opponent's race; and 3) that these facts and any other relevant circumstances raise an inference that the proponent of the strike excluded prospective jurors from the jury because of their race. *United States v. Watford*, 468 F.3d 891, 911-12 (6th Cir. 2006); *Rice v. White*, 60 F.3d 242, 253 (6th Cir. 2011).

Second, once the opponent of the strike has established a *prima facie* case, the burden shifts to the strike proponent to come forward with a neutral explanation for his or her use of peremptory challenge. *United States v. Watford*, 468 F.3d at 912; *Rice v. White*, 60 F.3d at 254. "Like the defendant's initial burden, the prosecutor's burden on step two is 'extremely light'; the prosecutor's proffered reason 'need not be particularly persuasive, or even plausible, so long as it is neutral.'" *Rice v. White*, 60 F.3d at 254.

Third, if the prosecutor tenders a race-neutral reason, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. In doing so, the district court has the responsibility to assess the strike proponent's credibility under all of the pertinent circumstances, and then to weigh the asserted justification against the strength of the strike

9

opponent's *prima facie* case under the totality of the circumstances. *United States v. Watford*, 468 F.3d at 912; *United States v. McAllister*, 693 F.3d 572, 580 (6th Cir. Sept. 6, 2012).

Here, Adams claims his counsel was ineffective by not having raised a *Batson* challenge during jury selection, alleging that the Government struck two female jurors who were the only black persons in the jury venire.

The record, however, reflects that: 1) there were two black females in the entire jury venire; 2) only one of those two women was seated as a prospective juror; and 3) the Government used a peremptory challenge to remove that one black woman from the jury. (ECF No. 97 at PageID.1816-18).

Moreover, as the Government notes, the transcript reflects that the Government used two peremptory challenges on two potential female jurors. The Government has provided race-neutral reasons why it struck both of those two potential jurors. One of the potential jurors stated that her son and brother-in-law had been convicted of drug crimes. (ECF No. 97 at PageID.1738-39 & 1769). As to the second women, she stated that he had previously served as a juror. This Court's standard practice during jury selection is to ask such individuals if they reached a verdict, instructing them not to state what the verdict was that was reached. As to this second woman, she responded that she had previously served as a juror, and then on her own, offered that the criminal defendant was acquitted in that matter. (*Id.* at PageID.1792 & 1797).

This Court concludes that Adams's claim that his trial counsel rendered ineffective assistance of counsel by not raising a *Batson* challenge fails. Even if both of the female jurors stricken by the Government were black, the Government has offered race-neutral reasons, supported in the record, as to why the Government used peremptory challenges as to those two women. Under the totality

10

of the circumstances, the Court concludes there was no purposeful discrimination.

**Trial Counsel's Alleged Failure To Request Sequestration Of Witnesses**

Adams asserts that his trial counsel was "ineffective for failing to invoke The Rule Of Evidence 615 which disallows one witness from hearing the other witnesses' testimony during the trial." (ECF No. 134 at PageID.2086). Adams makes this argument in a very cursory and conclusory manner, without identifying any witness who was allegedly present in courtroom during trial while another witness was testifying, and without specifying how that prejudiced him. All he states is:

> Rule 615 of the Federal Rules of Evidence was never invoked by Kostovski and this allowed other witnesses to be present while witnesses testified allowing for collusion, amongst other things to occur prejudicing Adams trial. Adams was denied a fair trial and his defense was prejudiced by this act.

(*Id*.)

The Court finds this claim without merit. This Court routinely sequesters the witnesses during criminal cases without the need for a motion or request from Counsel and did so here.

Moreover, even if that were not the case, Adams has not established either deficient performance or prejudice as he failed to identify any witness who was allegedly present in the courtroom while another witness was testifying or how that prejudiced him.

**Trial Counsel's Failure To Challenge 18 U.S.C. § 924(c) Enhancement**

Adams claims that his trial counsel rendered ineffective assistance of counsel for not objecting to the sentencing enhancement under Count 5, arguing that he should have only received a consecutive 5 year sentence under the law.

As the Government notes, Adams's trial counsel had a good reason not to argue for a sentence less than 25 years on Count Five – she would have lost.

11

It is undisputed that Adams had a prior conviction of 18 U.S.C. § 924(c), in Criminal Case Number 92-81100-01 in this Court. (*See* ECF No. 78-3). Adams had a second conviction of § 924(c) when the jury found him guilty in this case. Accordingly, because this was his second conviction, § 924(c)(1)(C) *required* that Adams receive a 25-year sentence as to Count 5. Indeed, in affirming Adams's sentence on direct appeal, the Sixth Circuit noted that Adams received "the mandatory 300 months [(25 years)] for Count 5, which must run consecutive to all other counts." *United States v. Adams,* 655 F. App'x at 316.

**Trial Counsel's Failure To Object To The Fact That Experts That Testified Were Never Admitted By The Court As Experts During Trial, And Appellate Counsel's Failure To Raise Same On Appeal**

Adams asserts that "[d]uring the direct testimony of all experts that testified in the criminal trial, none were qualified and admitted by the Court as experts." (ECF No. 134 at PageID.2079). Adams faults his trial counsel for failing to object to that at trial, and faults his appellate counsel for failing to raise the issue on appeal. This claim fails, for the reason concisely explained by the Government in its brief:

> Adams claims that this attorney should have objected to [the testimony of several witnesses at trial] because they were not "qualified and admitted . . . as experts." But under *United States v. Johnson*, 488 F.3d 690 (6th Cir. 2007), [a] district court "should not, in the presence of the jury, declare that a witness is qualified as an expert or to render an expert opinion" or certify the witness's expertise in front of a jury. *Id*. at 697. In other words, the Sixth Circuit explicitly forbids the process that Adams suggests his attorney should have followed. And each of these witnesses possessed requisite background to testify about their opinions on drug make-up, fingerprint analysis, and firearms production. In other words, these witnesses were appropriately qualified.

(ECF No. 127 at Pg ID 2040).

**Trial And/Or Appellate Counsel's Failure To Challenge Interstate Nexus For Felon-In-Possession Charge**

Adams also faults his trial counsel for not moving for acquittal on the felon-in-possession charge, on the ground that the Government failed to prove the interstate nexus requirement.

To the extent that Adams faults his trial counsel, or appellate counsel, for not having challenged the § 922(g) interstate nexus element, the claim fails. The Sixth Circuit has held that the interstate commerce nexus may be established at trial by simply showing that a firearm was manufactured somewhere other than the state in which it was possessed by the Defendant. *See, e.g., United States v. Pedigo*, 879 F.2d 1315, 1319-20 (6th Cir. 1989).

At trial, ATF Special Agent Curtis Brunson testified that the firearms at issue in this case were manufactured in Massachusetts, and therefore, crossed states lines. (ECF No. 93 at PageID. 1374-77). As such, the interstate commerce element was met and counsel did not provide deficient performance by failing to object.

**Trial Counsel's Failure To Object To The § 851 Notice**

Adams also faults his trial counsel for not having objected to the 21 U.S.C. § 851 Notice filed by the Government. (ECF No. 134 at PageID.2085).

On direct appeal, Adams argued that "the government should not have been permitted to file an information enhancing his minimum sentence under 21 U.S.C. § 851." *United States v. Adams*, 655 F. App'x at 322. The Sixth Circuit considered, and rejected, that argument.

Accordingly, Adams's trial counsel did not provide ineffective assistance of counsel by virtue of not having raised that objection at trial.

**Trial Counsel's Alleged Opening Of The Door To The Conyer Murder Coming Out At Trial During A Detective's Testimony**

Adams argues that his trial counsel was ineffective for "opening the door to the Conyers murder coming out at trial by conceding to allowing this homicide detective to testify at the trial

13

knowing it would be inflammatory just to have a homicide detective testifying in a drug case."

(ECF No. 134 at PageID.2085).  In support of this argument, Adams states:

> Had Kostovski not stipulated to this "Homicide Detective" being allowed to testify in a drug conspiracy trial then the prejudicial and inflammatory nature of his presence would have never been put before the jury. There were other agents who could have testified to this information put on that would suffice the Homicide Detectives presence and testimony.  In addition, Kostovski could have passed on any cross examination of this witness to not bring any other attention to him.

(*Id.* at PageID.2086).  Thus, Adams faults his trial counsel in two respects: 1) by not seeking to preclude this detective from testifying at trial; and 2) by cross-examining him during trial.

The detective at issue was present at Adams's proffer and testified about statements that Adams made, including about heroin that he allegedly got from and sold back to Conyers.  (ECF No. 93 at PageID. 1378-1380).  Because this witness had very relevant testimony to offer regarding the crimes with which Adams was charged, his trial counsel would have been unsuccessful had she moved to preclude this witness from testifying at trial simple by virtue of his being a homicide detective.

Second, Adams's trial counsel did not render deficient performance by virtue of cross-examining this witness, as that was a reasonable strategic decision.  At the trial transcripts reflect, this witness was expressly instructed by the Government not to mention the Conyers homicide at trial, and that was discussed in chambers with Adams's counsel.  Thus, Adams's counsel proceeded to cross-examine this witness with the knowledge that he had been so instructed.  And nothing about her cross-examination elicited or "opened to the door" to the detective having spontaneously stated that he was not at the interview "for the dope thing. I'm there for the homicide thing. Mr. Tyrone Conyers is dead." (*Id*. at PageID.1382).

14

Moreover, after the detective made that reference, Adams's trial counsel promptly moved for a mistrial at a side bar conference with the Court, but it was denied. The Court did, however, give a curative instruction. On direct appeal, the Sixth Circuit rejected Adams's claim that the curative instruction was insufficient to curb potential prejudice." *United States v. Adams*, 655 F. App'x at 320.

Accordingly, the Court rejects this claim as Adams has not established deficient performance or prejudice.

**Trial And Appellate Counsel's Failure To Object To The Sentence For The § 924(c) Charge Running Consecutively With The Other**

Finally, Adams faults his trial counsel for not objecting to his "illegal sentence" for the § 924(c) charge (Count 5) running concurrently with his sentences on the remaining charges. He also faults his appellate counsel for failing to raise this issue on appeal.

These claims fail, as a sentence under 18 U.S.C. § 924(c) must not "run concurrently with any other terms of imprisonment." 18 U.S.C. § 924(c)(1)(D); *see also United States v. Adams*, 655 F. App'x at 316 (noting that Adams's "mandatory 300 months for Count 5" "must run consecutive to all other counts.").

**CONCLUSION & ORDER**

For the reasons set forth above, the Court concludes that Adams is not entitled to habeas relief. The Court ORDERS that Adams's Motion to Vacate under 28 U.S.C. § 2255 is DENIED.

A certificate of appealability must issue before a petitioner such as Adams may appeal the district court's denial of his § 2255 Motion. 28 U.S.C. § 2253(c)(1)(B); FED. R. APP. P.

22(b).

Section 2253 provides that a certificate of appealability may issue only if a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). As the United States Supreme Court has explained this standard:

> . . . the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983). As the Court stated, "[w]here a district court has rejected the constitutional claim on the merits, the showing required to satisfy 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If a certificate of appealability is issued by a district court, it must indicate which specific issue or issues satisfy the required showing. 28 U.S.C. § 2253(c)(3).

Here, Adams's § 2255 Motion raised several arguments. After careful consideration, the Court concludes that reasonable jurists would not find the Court's assessment of those claims debatable or wrong. The Court shall therefore decline to issue a certificate of appealability.

**IT IS SO ORDERED.**

Dated: March 13, 2019                      s/Sean F. Cox
                                                    Sean F. Cox
                                                    U. S. District Judge

I hereby certify that on March 13, 2019, the foregoing document was served on counsel of record

via electronic means and upon Eric Adams via First Class mail at the address below:

Erie Adams 17265039
FLORENCE HIGH
U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 7000
FLORENCE, CO 81226

                                                                               s/J. McCoy
                                                                               Case Manager